IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUFUS THOMPKINS,<br><br>    Petitioner,<br><br>  vs.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-1387 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner, a prisoner of the State of California, currently incarcerated at the Correctional Training Facility in Soledad, California, filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("BPT") denial of parole during parole suitability proceedings in 2002. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has not filed a traverse. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

Petitioner was convicted of first degree murder in San Diego Superior Court in 1988 and was sentenced to twenty-five years-to-life in state prison. Petitioner's minimum parole eligibility date was November 23, 2003. In this habeas action, Petitioner does not challenge his conviction, but instead alleges that his due process rights were violated by the denial of parole during his subsequent parole suitability hearing on September 27, 2002.

At the September 27, 2002 hearing, Petitioner appeared with counsel before a BPT panel. The Board relied upon the appellate court's account of Petitioner's commitment offense. Petitioner testified that the statement was an accurate reflection of what happened, and the Court includes that summary here:

> Rufus Thompkins and Erma Thompkins had been married for 16 years. In late 1985, Erma Thompkins wanted to divorce Petitioner and the couple separated. On January 29, 1986, Petitioner went to Erma's apartment and their 12-year old son, Ray, answered the door. Petitioner told Ray that he had come by to switch his small television for the larger one. Petitioner had suspected Erma Thompkins was dating another man. Petitioner asked Ray if his mother had a visitor in the house. Ray told him her boyfriend Willie Battle was with his mother and asked Petitioner to wait outside, but Petitioner went into the apartment. Ray knocked on the bedroom door to alert his mother that Petitioner was there Petitioner pushed his son aside and opened the bedroom door to find Erma and Battle in bed. Erma told Petitioner that he had no right to break into her house. Petitioner confronted Battle about sleeping with his wife and Battle said that he thought the two were separated. Petitioner then took a gun from his waistband and shot Erma in the chest, shot Battle, and then shot Erma again. Erma died from a gunshot wound to the chest and leg. Battle survived the shooting, but was seriously injured. Petitioner ran out of the house, flagged a patrol officer down and surrendered. In the months prior to the killing, Petitioner told his son and brother-in-law that he would kill Erma and anyone else he found messing with her. Petitioner also stalked Erma. Erma applied for a restraining order the month before the killing but because she failed to show up in court, the matter was dropped. A friend, James Coffie, and Erma's daughter said they witnessed Petitioner beating Erma. Erma's daughter also reported that her stepfather, Petitioner, would park outside of Erma's apartment and watch her comings and goings.

(*See* Respondent's Answer, Exhibit B). The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety. The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, social history, his programming and behavior since commitment, and his parole plans.

Petitioner challenged the BPT's September 27, 2002 decision in the state superior, appellate and supreme courts. The California Court of Appeal issued the last reasoned opinion denying Petitioner's claims. After the Supreme Court of California summarily

2

denied his final state habeas petition on April 5, 2005, Petitioner filed the instant federal petition for a writ of habeas corpus. The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

## DISCUSSION

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

3

1   decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

2   B.   Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's September 27, 2002 decision finding him not suitable for parole, and denying him a subsequent hearing for three years, on the ground that the decision does not comport with due process. Petitioner claims that the BPT's decision is not supported by some evidence in the record having an "indicia of reliability" that Petitioner is currently a threat or unreasonable risk to society. *See* Petition at 5. Petitioner also claims that the BPT possesses an "Anti-Parole Policy" which is systemically biased, in violation of his constitutional rights.

1.   The BPT Decision

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the BPT considers various factors, including the prisoner's social history, and base and other commitment offenses, including behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole. The panel concluded that Petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time." September 27, 2002 Hearing Transcript at 68 (Answer Ex. 2 at 68:10-13). The panel explained that it found that the offense involved "multiple victims," that the "offense was carried out in a dispassionate and calculated manner," and that the "motive oft he crime was inexplicable and very

4

trivial." *Id.* at 68:14-18 - 69:5-6.  The panel also found that Petitioner had "a callous disregard for human suffering," and "a history of unstable and tumultuous relationships." *Id.* at 69:4-19.

The panel found that Petitioner had "not sufficiently benefitted in self-help and therapy programing," and thus "failed to demonstrate evidence of positive change." *Id.* at 69:22-26.  Petitioner's misconduct while incarcerated includes receiving discipline in 1996 for serious conduct towards a staff member, and then a serious sanction in 1990 for possession of stimulants and sedatives.  *Id.* at 70:1-2.  The panel further found that Petitioner's parole plans were insufficient because he had "no realistic parole plans in the last county of legal residence." *Id.* at 70:11-13.  The panel noted that Petitioner had an alternative plan in the county of Los Angeles but that he should have dual plans.

The panel commended Petitioner for all of the positive things he had done while in prison, including participating in self-help and therapy programming, including anger management and life skills groups.  In addition the panel commended Petitioner for getting himself individual counseling which is not usually offered to inmates that are lifer prisoners. The panel also noted that Petitioner has a vocational trade and has received positive work reports.

The panel found, however, that "a longer period of observation or evaluation of the prisoner is required before the Board should find the prisoner is required before the Board should find the prisoner suitable for parole." *Id.* at 73:7-9.  The panel recommended that  Petitioner "remain disciplinary-free, and if it is available, "upgrade vocationally and educationally." *Id.* at 73:11-13.  Petitioner should also participate in "beneficial self help and therapy programming." *Id.* at 73:16-17.

2.      The State Courts' Decisions

The state superior court reviewed and considered the decision of the BPT and found that the evidence is sufficient to sustain the Board's finding that the commitment offenses were carried out in a an especially cruel and callous manner and that they

5

demonstrated an exceptional disregard for human suffering." *See* Exhibit F in Support Answer. The state superior court also found that "parole could have been denied on this basis alone." *See Id.* The California Court of Appeal reviewed and considered the decision of the BPT and found that "the circumstances of the crime provide some evidence to support the Board's decision and the transcript of the hearing shows Thompkins was afforded due process." *See* Exhibit G in Support of Answer. The California Supreme Court summarily denied Petitioner's habeas petition.

        3.        <u>The Federal Right to Due Process</u>

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The Ninth Circuit has recently clarified that "California courts have made clear that the 'findings that are necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety.'" *Hayward v. Marshall,* 512 F.3d 536, 543 (9th Cir. 2008) (citations omitted) (quoting *Irons v. Carey*, 505 F.3d 846, 850 (9th. Cir. 2007)). The relevant criteria under which the BPT ordinarily determines whether a prisoner is too dangerous to be found suitable for parole are set forth in the California Code of Regulations at Cal. Code Regs.

6

tit. 15, § 2402. *Id.* This Court must therefore determine whether the state court decision finding the BPT's decision was supported by "some evidence the parolee's release unreasonably endangers public safety." *Id.* (citation omitted.)

The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128). Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." *Morales v. California Dep't of Corrections*, 16 F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 499 (1995). In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

The state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The BPT's September 27, 2007 decision to deny Petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability. *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under *Hill* is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." *Hill*, 474 U.S. at 455-56.

7

1    In this case, Petitioner continues to pose an unreasonable risk of danger to society.
2    There is evidence that the commitment offense was carried out in an especially cruel
3    manner.  Petitioner brought a gun to his estranged wife's apartment, asked their twelve-
4    year-old son to direct him to her, and then shot her twice at close range, and killed her,
5    while the boy was present in the apartment.  Then, Petitioner shot her boyfriend.  The
6    record also provides sufficient evidence to show that Petitioner had a very unstable social
7    history leading up to the offense.  Petitioner had stalked his estranged wife, and had told
8    his brother in law that if he found her with another man he would kill her.  In addition,
9    Petitioner's motive for his crime, jealousy over his estranged wife's new boyfriend, was
10   trivial compared to the gravity of the offense he committed.  Petitioner's unstable social
11   history coupled with the manner in which he carried out the commitment offense is
12   evidence that he will likely pose a threat to the public if he were to be released on parole.
13   *Cf.* Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show
14   unsuitability for parole and circumstances tending to show suitability).  Additionally he
15   has not fully taken advantage of self help and anger management programs.
16   Furthermore, Petitioner did not show that he had solid parole plans.  While he was able
17   to show he had support in Los Angeles, he was not able to show support that he had
18   support, a job and a place to live in the county where he would be released.

19   The Ninth Circuit has noted that continued reliance on the unchanging factors of
20   Petitioner's commitment offense and prior history will "at some point violate due
21   process" unless the unchanging circumstances reliably establish that Petitioner presents
22   an unreasonably public safety risk.  *See, Hayward,* 512 F.3d at 545 (citing *Irons* and
23   *Biggs*).  In this case, however, Petitioner had served less than the minimum 25-year term
24   of his sentence.  Thus, the panel's reliance on the commitment offense did not yet begin
25   to implicate the due process concerns raised in *Irons* and *Biggs*.

26   Based upon the record in this case, the state courts' determination that there was
27   some reliable evidence to support the BPT's decision, and that Petitioner's right to due

8

1  process was not violated, was not contrary to or an unreasonable application of federal
2  law. Accordingly, habeas relief is not warranted on this claim.

3     4.   "Anti-Parole" Policy

4  Petitioner further argues that the BPT possesses an "Anti-Parole Policy" that is
5  biased and violates his constitutional rights. None of the state courts to consider
6  Petitioner's claims explicitly ruled on this claim. Therefore, this Court now conducts "an
7  independent review of the record" to determine whether the state court's decision was an
8  unreasonable application of clearly established federal law. *Plascencia v. Alameda*, 467
9  F.3d 1190, 1198 (9th Cir. 2006). Petitioner has set forth no evidentiary support for his
10 bias claim. But even if he had, there is no evidence in the record indicating that this
11 alleged bias affected the BPT's decision or served as the basis for denying Petitioner
12 parole. To the contrary, the transcript from Petitioner's September 27, 2002 parole
13 hearing demonstrates that he received an individualized assessment of his potential
14 parole suitability. Petitioner's reliance on the high percentage of parole denials for life
15 inmates provides no proof of the BPT's alleged bias against parole. *Cf. California Dept.*
16 *of Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing fact that 90 percent of all
17 California inmates are found unsuitable for parole as evidence that deferring annual
18 parole suitability hearings was lawful and reasonable). Thus, habeas relief is not
19 available to Petitioner based on his claim of an "anti-parole policy."

## CONCLUSION

21 For the reasons set forth above, the petition for a writ of habeas corpus is
22 DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.
23 IT IS SO ORDERED.
24 DATED: May 19, 2008

_____
JEFFREY S. WHITE
United States District Judge

9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

THOMPKINS,

        Plaintiff,

  v.

KANE et al,

        Defendant.

Case Number: CV05-01387 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 19, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Rufus Thompkins D33938
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Dated: May 19, 2008

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk